No. 25,451.

J. C. SMITH, *Appellee*, v. J. E. BOYDE et al., Partners, doing
business as THE M. EGGLESTON OIL COMPANY, *Appellants.*

### SYLLABUS BY THE COURT.

CONTRACT—*Action to Recover on Oil Drilling Contract—No Reversible Error.*
In an action to recover on an oil drilling contract the proceedings considered, and held to present no substantial error.

Appeal from Wyandotte district court, division No. 3; WILLIAM H.
MCCAMISH, judge. Opinion filed February 7, 1925. Affirmed.

*L. S. Harvey,* and *James F. Getty,* both of Kansas City, for the appellants.

*James L. Hogin, Roy R. Hubbard,* both of Kansas City, and *Ellsworth C.
White,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover on an oil drilling
contract. The plaintiff prevailed and defendants appeal.

The facts were substantially as follows: The plaintiff was drilling oil wells in Miami county. The defendants, who resided in Kansas City, Kan., owned some leases in Johnson county, and procured
the plaintiff to drill three wells for them. Two of the defendants
went to see the plaintiff near La Cygne, after which he (plaintiff)
interviewed the defendants in Kansas City, Kan. Later the defendants prepared a contract which they took to the plaintiff
and which was executed by him. By the terms of this contract
the plaintiff agreed to move one of his drilling rigs to the defendants' leases in Johnson county, and to drill three wells at locations
to be designated by the defendants, each well to be not less than
.five hundred feet in depth, and not to exceed one thousand
feet, at $2.25 per foot for the drilling, the defendants to furnish
the casing or tubing, and he to furnish everything else. The defendants were to have the right to stop the drilling of any one of
the three wells anywhere between 500 feet and 1,000 feet in depth.
While the contract did not specifically state that the wells were
to be drilled for gas or oil, there was no mistaking the intention.
The contract also provided that the defendants were to pay $400
of the expense of moving the rig from La Cygne to Johnson county.
This they did after the rig was moved. The plaintiff began drilling under the contract at a location designated by the defendants

on or about November 1, 1920. He drilled the first well to a depth of 823 feet, when he called upon the defendants to furnish him 823 feet of 4⅞-inch casing, and notified them that he could not continue drilling further until that casing was furnished. He continued to call upon them for the casing from time to time by oral demands, but did not receive it, nor did he receive any definite answer of any kind. On February 4, 1921, he served upon the defendants a written demand informing them that he was still waiting for instructions and directions from them as to whether or not he was to drill this first well to a greater depth, advising them that under the contract they had the right to demand that he drill it on down to the depth of 1,000 feet; calling to their attention the fact that on December 27 he had reached the depth of 823 feet, and had made demand upon them for casing, and that it had never been furnished. He also notified them that if they did not desire to drill that well deeper, he was ready to proceed upon the drilling of the other two wells provided for in the contract, and demanding that he be given locations for drilling the other wells, or one of them, and advising them what casing he would need in order to start another of the wells, and also notifying them that he was at an expense of $50 per day while his drilling rig and outfit remained idle, waiting upon them for instructions, and that he would expect to hold them responsible for any loss he might sustain by reason of their failure to perform the terms of the contract, or by reason of any hindrance or delay.

The action was filed May 13, 1921. Therein plaintiff sought to recover for drilling one well 823 feet at the contract price of $2.25 per foot, amounting to $1,851.75. Also for damages for refusal of defendants to permit him to drill the two additional wells to a minimum depth of 500 feet. Trial to a jury resulted in a verdict for plaintiff amounting to $4,881.75. The jury answered special questions in which they itemized the amounts making up the verdict, the items being as follows:

Drilling first well at contract price.................................... $1,851.75
Damages for failure to permit him to drill two additional wells to
  minimum depth of 500 feet each.................................... 1,000.00
Damages arising by reason of his rig, tools and outfit being kept shut
  down and idle for a period of 64 days, at $25 per day.............. 1,600.00
Damages arising by reason of labor employed by plaintiff—one em-
  ployee at $10 per day for 43 days................................ 430.00

Error is alleged because the court permitted a somewhat extensive

Smith v. Eggleston Oil Co.

cross-examination of the defendant Eggleston who had acted as president or managing officer for the defendants. One of the chief issues in the case was whether or not, under the terms of the contract, the plaintiff had spoiled the well. Eggleston had testified that he was acting as president and was superintendent of the drilling operations for the defendants; that he located the field and finally located the point at which the first well should be drilled by walking over it holding a forked peach twig in his hand, and when the twig revolved he knew that there was oil below. While the cross-examination may have been more extensive than is usual, we are unable to say that it substantially prejudiced the rights of the defendants.

Defendants next complain because the plaintiff was permitted to introduce testimony to the effect that, having drilled one well upon the lease in question to a depth of 823 feet, and knowing the formation below the surface, he could estimate how long it would take him to drill two additional wells to a depth of 500 feet. This testimony cannot be said to have been incompetent. Doubtless it was the best evidence that could have been produced upon this point. Other complaints of the introduction of evidence or the refusal to receive evidence have been considered, but we are unable to discover any error affecting prejudicially the rights of the defendants. Complaint is made of the instructions. We have examined the instructions and conclude that they fairly covered the issues in the case. Complaint is made that the verdict was not supported by the evidence. The complaint is not well taken. We do not deem it necessary to set down or analyze the evidence. We have examined and considered it, and conclude that it was abundant to support the verdict and special findings. We discern no error which would warrant a reversal. (See *Shanks v. Oil & Gas Co.*, 116 Kan. 525, 227 Pac. 251.)

The judgment is affirmed.

HARVEY, J., not sitting.